1
2
3
4
5

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.  CV-24-08076-PCT-SMB (DMF) |
| Plaintiff/Respondent, | No.  CR-18-08040-001-PCT-SMB |
| v. | **REPORT AND RECOMMENDATION** |
| Douglas Allen Jones, | |
| Defendant/Movant. | |

**TO THE HONORABLE SUSAN M. BRNOVICH, UNITED STATES DISTRICT JUDGE:**

This matter arises from a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody, and this matter is on referral to undersigned for further proceedings and a report and recommendation pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure (Doc. 4 at 1, 3).[1]  Undersigned has carefully reviewed the record and applicable law.  For the reasons set forth below, it is recommended that relief in these 28 U.S.C. § 2255 proceedings be denied without conducting an evidentiary hearing and that a certificate of appealability be denied.

---

[1] Citations to the record indicate documents in the official electronic document filing system maintained by the District of Arizona under case numbers CV-24-08076-PCT-SMB (DMF) and CR-18-08040-001-PCT-SMB.  Citations to documents within Movant's criminal case, case number CR-18-08040-001-PCT-SMB, are denoted "CR Doc." Citations to documents in Movant's instant § 2255 matter, case number CV-24-08076-PCT-SMB (DMF), are denoted "Doc."  Further, "RT" refers to the Official Reporter's Transcript in case number CR-18-08040-001-PCT-SMB (*see* CR Docs. 203-206 for the four-day jury trial, RT 6/21/21, RT 6/22/21, RT 6/23/21, & RT 6/24/21), and "Tr. Exh." refers to the Exhibit Number presented at Movant's criminal trial in case number CR-18-08040-001-PCT-SMB (*see* CR Doc. 173).

## I.     BACKGROUND

Respondent provides an extensive review of the procedural history of the criminal prosecution of Movant in Respondent's filing entitled, "Government's Response to Petitioner/Defendant's Second Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereafter "Answer to the Amended § 2255 Motion" or "Answer") (Doc. 31 at 5-17).  Also, the United States District Judge to which this Report and Recommendation is directed, Judge Susan M. Brnovich, presided over the Movant's criminal case beginning on December 3, 2018 (CR Doc. 50), before the expiration of the pretrial motions deadline (CR Docs. 49, 53) and before substantive pretrial motions were filed with the Court (*see, e.g*., CR Doc. 65).

In short, Movant Douglas Allen Jones ("Movant" or "Movant Jones") was arrested in January 2018 based on a complaint charging Movant with distribution and receipt of child pornography in violation of the United States criminal code (CR Doc. 1).  The following month, a federal grand jury returned an indictment charging Movant with five crimes: four counts of Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (CR Docs. 1, 16).  At trial, the government presented ten witnesses, and Movant's counsel cross-examined all of the witnesses (CR Docs. 166-169, 172, 203-206).  At the conclusion of the four-day trial, a jury convicted Movant of all counts (CR Docs. 169, 177, 206 at 795-97).  Movant was sentenced to 180 months' imprisonment and lifetime supervised release (CR Doc. 189).  Movant appealed from the judgment, challenging the 180 months' imprisonment sentence imposed (CR Docs. 198, 229).  *See United States v. Jones*, 2023 WL 386765 (9th Cir. 2023).  The Ninth Circuit affirmed the judgment.  *Id.*

Insofar as legal representation, Movant was found to qualify for appointed counsel upon Movant's arrest and was initially represented by several lawyers at the Federal Public Defender's Office for the District of Arizona, including Maria Weidner and Susan Anderson ("pretrial counsel") (CR Docs. 5, 9, 21, 61).  Shortly before trial and after

substantial pretrial motions litigation by pretrial counsel, Movant retained counsel Dwane Cates ("trial counsel") in lieu of pretrial counsel (CR Docs. 141, 143). Movant retained different counsel for appeal (CR Docs. 196, 197, 198). Later, appointed appellate counsel Celia Rumann was substituted for Movant's retained appellate counsel (CR Docs. 209, 210, 227). Before appellate briefing was completed, subsequently retained counsel for Movant, Jeremy Gordon ("appellate counsel"), was substituted for appointed appellate counsel Celia Rumann (CR Doc. 227).

In February 2024, the Ninth Circuit issued its mandate regarding the affirmance of the judgment against Movant in Movant's direct appeal (CR Doc. 229). On April 22, 2024, Movant filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (Docs. 1, 2).[2] Movant's retained counsel Bretton Barber ("retained § 2255 counsel") filed the § 2255 Motion (*Id.*). In the § 2255 Motion, Movant asserted two grounds for relief: in Ground One, Movant claimed that a deliberating juror failed to disclose that the juror was a former CIA and DHS agent, whose presence on the jury Movant argued caused substantial prejudice to Movant in violation of the Fifth and Sixth Amendments of the United States Constitution; and in Ground Two, Movant contended he received ineffective assistance of counsel in violation of the Fifth and Sixth Amendments of the United States Constitution by trial counsel's failure to call as witnesses Michelle Bush and Renee DeSaye during Movant's jury trial (*Id.*). The Court ordered Respondent to answer the § 2255 Motion (Doc. 4).

Before Respondent filed an answer to the § 2255 Motion, Movant expressed in filings with the Court his dissatisfaction with the § 2255 Motion which retained § 2255 counsel had filed on Movant's behalf, Movant sought to proceed in a pro se capacity, and Movant sought to file an amended and pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (Docs. 5-7, 14-19). Upon confirmation that Movant possessed or would be promptly provided the case records and materials needed for Movant to self-represent and after assuring that Movant indeed

---

[2] Respondent does not contest the timeliness of these proceedings or of Movant's pending claims (Doc. 31).

wanted to self-represent and did not seek new counsel, appointed or otherwise, the Court allowed Movant to self-represent and to file an oversized amended and pro se § 2255 Motion, which Movant titled Second Amended Motion to Vacate, Set Aside, or Correct Sentence (28 U.S.C.S. 2255) ("Amended § 2255 Motion") (Docs. 19-26).

Promptly after the Amended § 2255 Motion was filed, Respondent filed a motion for order to declare attorney-client privilege waived and to authorize several defense counsel to provide affidavits (Doc. 27).  Before Movant's response to Respondent's motion, Respondent filed its Answer to the Amended § 2255 Motion (Doc. 31; *see also* Docs. 28, 29, 30) followed by a motion to withdraw the motion for order to declare attorney-client privilege waived and to authorize several defense counsel to provide affidavits (Doc. 32).  The motion to withdraw the motion for order to declare attorney-client privilege waived and to authorize several defense counsel to provide affidavits stated:

> The government respectfully requests to withdraw its Second Motion to Declare Attorney-Client Privilege Waived and To Authorize Defense Counsel and Appellate Counsel to Provide Affidavit at Docket 27, in Case No. 3:24-cv-8076-SMB-DMF. In addition to filing the motion on October 18, 2024, the government sent a copy of the motion to [Movant] Douglas Allen Jones at his address at FCI-Oakdale via mail. Since that time, the government / respondent has addressed the five issues that [Movant] Jones' raised, and filed its response on November 15, 2024. The motion at this time, therefore, is moot.

(Doc. 32).  The Court granted the motion to withdraw the motion for order to declare attorney-client privilege waived and to authorize several defense counsel to provide affidavits (Doc. 34).

Movant filed a timely reply in support of his Amended § 2255 Motion ("Reply") (Doc. 36).  Movant also filed a motion for appointment of special master, which the Court denied (Docs. 35, 37, 38).  Movant's Amended § 2255 Motion is ripe for a Report and Recommendation per United States District Judge Brnovich's referral order (Doc. 4).

## II.     MOVANT'S AMENDED § 2255 MOTION

The Court granted Movant's request to file "an oversized brief" in presenting his

Amended § 2255 Motion (Docs. 20, 25, 26).  In his Amended § 2255 Motion, Movant asks the Court to vacate his trial convictions and sentences based on five grounds (Doc. 26). First, Movant alleges that his pretrial counsel, trial counsel, and appellate counsel failed to adequately investigate and/or raise objections to audio recordings in the case based on Movant's assertions that these recordings were tampered with or fabricated (*Id.* at 5-9). Second, Movant alleges that his pretrial counsel and trial counsel failed to investigate and/or object to photographs that Movant asserts were altered (*Id.* at 10-17).  Third, Movant alleges that pretrial counsel and trial counsel were ineffective by failing to raise objections to contradictory evidence and testimony which Movant asserts "reflected issues sounding in *Napue, Brady*, and *Giglio* violations" (*Id.* at 18-33).[3]    Fourth, Movant alleges that deliberating Juror 13's failure to disclose government employment from 16 years earlier violated Movant's Fifth and Sixth Amendment rights (*Id.* at 34-36); Juror 13 identifies himself as Art Keller ("Juror 13" or "Keller") in a book that Juror 13 self-published after Movant's trial (*Id.* at 34-35).   Fifth, Movant alleges that his trial counsel provided ineffective assistance of counsel by not calling defense witnesses at trial, particularly expert witness Michele Bush and investigator Renee DeSaye (*Id.* at 37-39); this ground and other aspects of the Amended § 2255 Motion can be read liberally as also raising an ineffective assistance of counsel claim for not calling Movant as a trial witness (*Id.* at 1-40).  Movant requests an evidentiary hearing on the grounds raised in his Amended § 2255 Motion (*Id.* at 1).

Movant attached to his Amended § 2255 Motion:  Exhibit A (Doc. 26-1 at 1-31), which is a Digital Forensics Corp "Phase II Examination Report" dated June 17, 2019 ("DFC Report") described by Movant as a third party professional analysis of audio data contracted by Movant's family while Movant was represented by pretrial counsel (Doc. 26 at 6); Exhibit B (Doc. 26-1 at 32-34), which is a letter from appointed appellate counsel Celia Rumann, whom Movant states was discharged by Movant before appellate briefing

---

[3] *See Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

(Doc. 26-1 at 39, ¶ 29); Exhibit C (Doc. 26-1 at 35-40), which is an affidavit by Movant. Also, Movant attached to his reply an Exhibit D (Doc. 36 at 26-29), which is an additional affidavit by Movant.

Respondent attached to its Answer to the Amended § 2255 Motion (Doc. 31): "Attachment A" (Doc. 31-1), which Respondent states is the trial court's blank prospective juror questionnaire sent out prior to trial (Doc. 31 at 9 n.4 and associated text; *compare* CR Doc. 154-1; *see also* CR Doc. 156); "Attachment B" (Doc. 31-2), which is the Complaint and the accompanying affidavit of probable cause by Agent Charles Davis that led to Movant's arrest (*see also* CR Doc. 1); "Attachment C" (Doc. 31-3), which refers to the Miranda form filled out by Agent Davis and signed by Movant (Tr. Exh. 5); "Attachment D" (Doc. 31-4) which is at least a substantial part of Juror 13's self-published book on Amazon; "Attachment E" (Doc. 31-5), which refers to the redacted transcript of interview Part 1 of Movant that was played for the jury in audio form and admitted into evidence in the audio form (Tr. Exh. 3; Tr. Exh. 1 (audio); *see* CR Doc. 173 at 1; Doc. 31 at 7 n.2); "Attachment F" (Doc. 31-6), which refers to the redacted transcript of interview of Movant which was played for the jury in audio form and admitted into evidence in the audio form (Tr. Exh. 4; Tr. Exh. 2 (audio); *see* CR Doc. 173 at 1; Doc. 31 at 7 n.2). The Court allowed Respondent to file excess page briefing in response to the Amended § 2255 Motion (Docs. 28, 29, 30); Respondent's Answer to the Amended § 2255 Motion is sixty-eight (68) pages not including the certificate of service or exhibits (Doc. 31).

Movant filed a timely, lengthy reply in support of his Amended § 2255 Motion (Doc. 36).[4] As stated above, Movant attached to his reply an Exhibit D (*Id.* at 26-29), which is an additional affidavit by Movant. Movant also filed a motion for appointment

---

[4] To the extent that Movant raises new claims in his reply in support of his Amended § 2255 Motion, the Court declines to consider such as unauthorized under applicable rules and law. *See* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 2(b)(1) (instructing that the Section 2255 motion must "specify all the grounds for relief available to the moving party"); *United States v. Berry*, 624 F.3d 1031, 1039 n.7 (9th Cir. 2010) (declining to address new argument raised for the first time in a reply brief in a § 2255 proceeding); *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) ("Arguments raised for the first time in [habeas] petitioner's reply brief are deemed waived."). Moreover, Movant has not made a sufficient showing that any new claims he would seek to raise were not available to him at the time of the Amended § 2255 Motion.

of special master, which the Court denied (Docs. 35, 37, 38).

## III.    APPLICABLE LEGAL FRAMEWORK

### A.    Section 2255 Motion to Vacate, Set Aside, or Correct Sentence

A federal prisoner is entitled to relief from his sentence pursuant to Section 2255 if it was "imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

### B.    Ineffective Assistance of Counsel

To obtain relief for an ineffective assistance of counsel (or "IAC") claim, a movant must show that counsel's representation fell below an objective standard of reasonableness and also that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692 (1984). These are referred to as *Strickland*'s two separate components or "prongs." *See Catlin v. Broomfield*, 124 F.4th 702, 727-728 (9th Cir. 2024). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "The benchmark for judging any claim of ineffectiveness must be whether counsel's actions so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In reviewing counsel's performance, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The standard for judging counsel's representation is "highly deferential." *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* Generally, because review of counsel's performance is extremely limited, conduct that "might be considered sound . . . strategy" does not constitute ineffective assistance of

counsel. *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The reviewing court must consider whether "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 688). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has instructed that counsel "has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (quoting *Strickland*, 466 U.S. at 691 (emphasis added in *Pinholster*)). The Supreme Court has further recognized that "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Additionally, the Supreme Court has concluded that "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

To establish prejudice, a movant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The prejudice component "focuses on the question of whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

The court need not reach both prongs of the *Strickland* test. 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

## C.     Standard for Warranting Evidentiary Hearing

Under 28 U.S.C. § 2255, a court shall grant an evidentiary hearing "[u]nless the

motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. § 2255(b).

In determining whether to grant an evidentiary hearing, a court must consider whether, accepting the truth of a movant's factual assertions that are not directly and conclusively refuted by the record, the movant could prevail on his claims.  *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994); *Turner v. Calderon*, 281 F.3d 851, 890-91 (9th Cir. 2002).  To be entitled to an evidentiary hearing, a movant must allege specific factual allegations that, if true and not contrary to the clear record, "state a claim on which relief could be granted."  *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).  To state a claim for ineffective assistance of counsel such that a movant would be entitled to an evidentiary hearing, a movant must allege facts showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 at 686.

The Court need not hold an evidentiary hearing if the record conclusively shows that Movant is either not entitled to relief or if, in light of the record, his claims are "palpably incredible or patently frivolous."  *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011) (quoting *Schaflander*, 743 F.2d at 717).

## IV.  DISCUSSION

### A.    Movant's Claims Asserting Ineffective Assistance of Counsel

In Grounds One, Two, Three, and Five of the Amended § 2255 Motion, Movant raises various ineffective assistance of counsel claims, which Movant further urges in his reply (Docs. 26, 36).  Movant requests an evidentiary hearing on his claims (*Id.*).

### 1.    Ground One: Argument that Movant's counsel were ineffective for not investigating/objecting/arguing that audio recordings were tampered with or fabricated

In Ground One of the Amended § 2255 Motion, Movant alleges that his counsel failed to adequately investigate and/or raise objections to audio recordings in the case based

on Movant's assertions that these recordings were tampered with or fabricated (Doc. 26 at 5-9). Movant emphasizes that his pretrial counsel, trial counsel, and appellate counsel failed to adequately investigate and/or file objections relating to audio recordings in the case that Movant asserts were tampered with or fabricated (*Id.* at 9). That all of his counsel decided that this issue was not substantial enough to pursue further than they did or to otherwise raise this issue in defense and representation of Movant underscores that the *Strickland* standard, especially on the first prong, has not been met regarding Ground One of the Amended § 2255 Motion.

The audio recordings on which Movant bases Ground One of the Amended § 2255 Motion are the first part of the law enforcement interview of Movant, the second part of the law enforcement interview of Movant, and the law enforcement interview of one of Movant's roommates, Theodore Welch ("Welch") (Doc. 26 at 5-9).

Movant's Amended § 2255 Motion and attachments refute his Ground One claims regarding tampering and falsification of all three recordings on both *Strickland* prongs. The DFC Report (Doc. 26-1 at 1-31), which Movant represents was obtained by his family during pretrial proceedings (*Id.* at 38, ¶ 20), expressly and unequivocally states that the audio recordings of Movant were not edited and are original (*Id.* at 22).[5] Also, the DFC Report states that the audio recording of Welch was edited by only for "manipulating the amplitude of the signal (possibly noise reduction or amplifying)" (*Id.*); after that "the audiorecording was converted and saved in Windows Media Format" but that the forensic examiner "did not observe any indications of cutting and/or pasting audio segments in the audio recording" (*Id.*).[6] In his Amended § 2255 Motion, Movant recounts having provided the DFC Report to his pretrial counsel and to his trial counsel (Doc. 26 at 7, 9). The analysis and conclusions of the DFC Report demonstrate that decisions by Movant's pretrial

---

[5] Earlier in the DFC Report, the expert wrote about the audio recordings of Movant that "[d]uring critical listening and spectrographic analysis, the Forensic Examiner did not observe any details that significantly jeopardize the authenticity of the audio recording" (Doc. 26-1 at 13, 16).

[6] Related to the Welch interview, the expert wrote that "[d]uring critical listening and spectrographic analysis, the Forensic Examiner did not observe any details of cutting and/or pasting audio segments in the audio recording" (Doc. 26-1 at 21).

counsel, trial counsel, and appellate counsel not to raise Movant's tampering and falsification assertions regarding any of the three audio recordings were well within the *Strickland* standard of professional performance. Lack of raising these assertions did not cause prejudice to Movant.

Moreover, pretrial and trial counsel did not rely solely on the DFC report. With his Amended § 2255 Motion, Movant included a letter from discharged appointed appellate counsel Celia Rumann (Doc. 26-1 at 33-34, 39). The letter states regarding pretrial counsel's work regarding the audio recordings of Movant:

> I am enclosing for your information two documents I received today from your prior attorney, [pretrial counsel] Susan Anderson. They indicate that the Federal Public Defender's Office did hire an expert to examine the tapes of your interview for any evidence of tampering. It appears that the expert did not find any such evidence, so they did not have the expert write a report.

(Doc. 26-1 at 34). Regarding the Welch audio recording, Movant asserts in his Amended § 2255 Motion that his trial counsel was apprised of the DFC report and "conducted informal review through an undisclosed audio examiner, which resulted in no report having been generated" (Doc. 26 at 9). Movant represents that trial counsel relayed to Movant that the examiner could not determine if any modification of the Welch audio interview because the audio recording was a copy (*Id.*).

Given the above, Movant's assertions in his affidavits in support of his Amended § 2255 Motion and Reply pertaining to Movant's recollections and impressions regarding the audio recordings are insufficient to state a claim for ineffective assistance of counsel under either *Strickland* prong. Movant has not stated a claim that representation provided by his pretrial counsel, trial counsel, and appellate counsel insofar as his claims of tampering and falsification of the audio recordings fell below the objective standard of reasonableness. Movant has not stated a claim that representation provided by his pretrial counsel, trial counsel, and appellate counsel insofar as his claims of tampering and falsification of the audio recordings prejudiced Movant's defense. Thus, an evidentiary hearing on Movant's Ground One claims is not warranted. This conclusion does not

1    change with consideration of the broader record.

2        Regarding *Strickland*'s prejudice prong as to the audio recording of the Welch

3 interview, the Welch interview was never offered as a trial exhibit or played for the jury

4 (CR Docs 203-206).  Although Welch testified at trial, he was not impeached with his

5 recorded interview of which Movant complains in this ground (RT 6/22/21 at 396-418; CR

6 Doc. 204 at 184-206).  Trial counsel for Movant cross examined Welch (RT 6/22/21 at

7 412-416; CR Doc. 204 at 200-204).  Respondent correctly notes that in doing so, Movant's

8 trial counsel elicited positive information for Movant including that Welch "would give

9 out the [WiFi] password to a guest if asked (RT 6/22/21 at 413[; CR Doc. 204 at 201]), that

10 Welch also had BitTorrent on his own computer (RT 6/22/21 at 414-15[; CR Doc. 204 at

11 202-03]), and that Welch had never seen [Movant] Jones looking at child pornography (RT

12 6/22/21 at 414[; CR Doc. 204 at 202])" (Doc. 31 at 30).  Thus, Respondent is correct that

13 the record conclusively demonstrates that Movant cannot meet the second prong of

14 *Strickland* as to the audio recording of Welch (Doc. 31 at 29-30).

15        Respondent is also correct that the broader record undermines *Strickland*'s prejudice

16 regarding Movant's unraised assertions that the two audio recordings of Movant were

17 tampered or otherwise fabricated:

18        Even if [Movant's] counsel(s) would have objected to the recordings, the
19        evidence still pointed unequivocally to [Movant] being responsible for the
20        child pornography activities, and no one else. When Welch testified at trial,
       the jurors knew Welch had a felony conviction for a drug crime involving
21        marijuana (RT 6/22/21 at 397) and so could assign whatever weight they
       wanted to his testimony. Welch identified [Movant's] desktop computer that
22        was on the desk in [Movant's] bedroom, and said that was the only computer
23        he knew [Movant] had. (RT 6/22/21 at 406-07.) Welch said he, Welch, never
       used [Movant's] computer in [Movant's] bedroom and had never seen
24        [Movant's] computer located anywhere else in the residence. (RT 6/22/21 at
25        408, 414.) Welch never saw the third roommate, Travis Kohn, nor anyone
       else who was in the residence, use either of [Movant's] computers. (RT
26        6/22/21 at 414.) Welch was not familiar with BitTorrent and denied doing
27        any child pornography activities. (RT 6/22/21 at 409.) Welch said his own
       computer and phones were previewed and given back to him the date of the
28        search warrant. (RT 6/22/21 at 409-10.) He and [Movant] were on friendly

1    terms. (RT 6/22/21 at 413.)

2    (Doc. 31 at 31).

3        The broader record also defeats Movant's Ground One claims based on the pause

4    length between the two interviews of Movant.  Regarding the pause length between the

5    interviews of Movant, Respondent accurately points out that Movant "does not cite any

6    specific resulting prejudice such as the government presenting any inculpatory statement(s)

7    from the unrecorded time period, or to any force or coercion rendering his recorded

8    statements involuntary" (*Id.* at 21).  Further, Movant's assertions about the time between

9    the two interview recordings of Movant fail "to acknowledge Agent Davis' trial testimony

10   about the explanation for a difference in time because of the clocks used" (*Id.* at 24).

> Specifically, during his trial testimony, Agent Davis acknowledged a time
> discrepancy relating to the start time of [Movant's] recorded interview of
> approximately 18 minutes. Agent Davis stated that when the agents started
> the Part 1 interview, the time they described on the recording was 7:27 a.m.
> (RT 6/24/21 at 674; Attachment E, Tr. Exh. 3 at 3.) But, Agent Davis also
> acknowledged that the Miranda form that was signed concurrent to the
> beginning of the interview showed 7:44 a.m. (RT 6/24/21 at 675-76;
> Attachment C, the Miranda form as Tr. Exh. 5.) Agent Davis testified that he
> used the time on the clock of Agent Martin's vehicle and that "Agent Martin
> is somewhat famous for setting her clock a little bit ahead to make sure she's
> on time for things, so it might not have been exactly correct. She tends to
> advance it a bit, I think." (RT 6/24/21 at 675.) This fact alone accounts for
> approximately 18 minutes, not of "missing time," but simply of who recorded
> the time from which timepiece. [Movant's] "Affidavit of Truth," did not add
> any new facts because he only explained the time period between his two
> interviews as "Agents Rose and Davis did discontinue the interview for a
> significant period of time…" (CV 21-1, at 37, ¶ 14). The bottom line is that
> there is no "missing time." At most, two agents used different clocks, with
> one for sure that was not receiving its signal from a satellite. (RT 6/24/21 at
> 675.)

25   (*Id.* at 24-25).[7]

26   _____

[7] Movant's references in his Amended § 2255 Motion to the statements in support of
probable cause for the complaint are all made in reference to Movant's assertions of
27   ineffective assistance of counsel (Doc. 26 at 5-7).  Respondent is correct that Movant's
assertions about the recordings would not and do not meet the standard of *Franks v.*
28   *Delaware*, 438 U.S. 154 (1978), if applicable, in light of Movant's indictment less than a
month after Movant's arrest on the complaint supported by the affidavit of probable cause

In sum, regarding the *Strickland* prongs and Movant's Ground One claims based on counsel not litigating the recordings issues described by Movant:

> [Movant] can set forth his flawed theories about how investigations should work, but that does not mean his counsel must act accordingly and investigate issues without any foundation. [Movant] was arrested and charged based on, for example, the original investigation that led investigators to his home, the on-scene previews of devices in the home, the statements of all three roommates, the absence of evidence related to child pornography activities on his roommates' devices, and the positive search results on [Movant's] computers both found in his bedroom. The jury determined the evidence supported he was guilty beyond a reasonable doubt. There is nothing ineffective about any of [Movant's] counsels failing to investigate the baseless claim that either his, nor Theodore Welch's, recorded interviews were altered.

(*Id.* at 32).

Likewise, Movant's attempt to include an ineffective assistance of trial counsel claim in Ground One based on Movant not testifying at trial fails to state a claim based on the record and the applicable law.   In Ground One, Movant alleges trial counsel "sandbagged" Movant by advising Movant prior to trial that if evidence about altered recordings and Movant's own testimony were not put forth it would give Movant a stronger appeal basis (Doc. 26 at 9).  After Movant consulted with trial counsel about his right to testify or right not to testify, Movant told the District Judge, "Yes, that is my choice not to testify" (RT 6/24/21 at 689; Doc. 206 at 34).  Further, in his reply in support of the Amended § 2255 Motion, Movant states that had Movant chosen to testify during the trial, Movant's trial testimony would have been simple and direct denials of any admissions and of the criminal allegations against him (Doc. 36 at 8).  Respondent is correct that:

> In the event he would have testified, [Movant] would have faced a cross-examination that showed the extensive, corroborating forensic data on two computers that were located in his bedroom that pointed to him being

---

and in light of Movant's release from pretrial custody a few months later (CR Docs. 16, 38; *see* Doc. 31 at 22-29).  In any event, Respondent's *Franks* arguments also demonstrate that it did not fall below reasonable professional standards of competence for counsel to choose not to raise Movant's assertions of falsification or tampering with the audio recordings in defense of the prosecution of Movant (Doc. 31 at 22-29).

responsible. [Trial counsel's] strategy was to demonstrate, through cross-examination and argument, that the government did not produce anyone who saw [Movant] doing any child pornography activities, and to cast equal suspicion onto either of [Movant]'s adult roommates or another person who may have frequented their home. [Trial counsel] further attacked the techniques used by law enforcement to gather evidence and conduct interviews. Even though the jury ultimately found [Movant] guilty, this did not render [trial counsel's] performance ineffective[.]

(Doc. 31 at 33).

In short, Movant's Amended § 2255 Motion Ground One claims do not state a claim on either of *Strickland*'s prongs. Rather, the record clearly demonstrates that Movant's Ground One claims fail.

### 2.    Ground Two: Argument that pretrial counsel and trial counsel failed to investigate and/or object to photographs that Movant asserts were altered

In Ground Two of the Amended § 2255 Motion, Movant alleges in that his pretrial counsel and trial counsel failed to investigate and/or object to photographs that Movant asserts were altered (Doc. 26 at 10-17). Movant claims trial counsel failed to properly object to admission of the photographic evidence (*Id.* at 14). In the Amended § 2255 motion, Movant states that he told both pretrial counsel and trial counsel that the laptop computer was not found in his bedroom, but rather had been discarded in a recycling bin outside of the residence (*Id.* at 13). In Movant's "Affidavit of Truth-Douglas Allen Jones", Movant claims that "[t]he laptop was set aside for several months, then placed into a recycling bin outside my residence, along with several other discarded computer components" (Doc. 26-1 at 36, ¶ 8).

In its Answer, Respondent describes the portions of the record as well as the applicable law that establish the lack of any merit whatsoever to Movant's Ground Two claims (Doc. 31 at 33-38). Further, regarding trial counsel's performance, Respondent is correct that:

[o]n cross-examination, [trial counsel] demonstrated he understood [Movant]'s allegation about the laptop by, for example: (1) asking Agent

1
2
3
4
5
6
7
8
9

> Martin "And the claim was that the laptop was found under this bed,
> correct?" (RT 6/21/21 at 142); (2) asking Agent Martin "Are you telling me
> that the FBI doesn't have a camera that can take a photograph underneath a
> bed with a flash?" (RT 6/21/21 at 142); (3) responding "Is that an excuse for
> poor police work?" when Agent Martin testified that the photographer was
> seven months pregnant and it was difficult for her to lean down (RT 6/21/21
> at 143); (4) asking SSA Engstrom "Is there some reason you didn't call
> the…photographer to come take a photograph of it?" and "…was it
> physically possible to take a photograph underneath that bed?" (RT 6/21/21
> at 171-72); (5) making the point that the only pictures of the laptop were
> pictures after it had already been previewed (RT 6/21/21 at 173); and (6)
> making the point that the sketch which placed the laptop computer in the
> corner underneath the bed was not where SSA Engstrom said she located it
> (RT 6/21/21 at 174).

10
11
12
13

(Doc. 31 at 37). Trial counsel challenged the evidence of which Movant complains, and the jury was tasked with weighing "the credibility of the witnesses knowing that the laptop computer was not photographed in its original place" (*Id.*).

14
15
16
17

Moreover, earlier in the proceedings, pretrial counsel had filed numerous motions to suppress (Docs. 76, 77, 78, 79), including a motion to suppress all evidence obtained pursuant to the search of Movant's residence (Doc. 78). "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Gentry*, 540 U.S. at 8.

18
19
20
21

The Court's record conclusively shows that Movant has not stated a claim on either of *Strickland*'s prongs that pretrial and trial counsel were ineffective regarding the photographic evidence of which Movant complains in this ground. Rather, the record clearly demonstrates that Movant's Ground Two claims fail.

22
23
24
25

> **3.     Ground Three: Argument that pretrial counsel and trial counsel
> were ineffective by failing to raise objections to contradictory evidence and
> testimony reflecting Napue, Brady, and Giglio violations**

26
27
28

In Ground Three of the Amended § 2255 Motion, Movant alleges that pretrial counsel and trial counsel were ineffective by failing to raise objections to contradictory evidence and testimony which Movant asserts "reflected issues sounding in *Napue, Brady,* and *Giglio* violations" (Doc. 26 at 18-33). Movant alleges that his trial counsel was

1    ineffective for not raising *Napue*, *Brady*, and *Giglio* violations related to false testimony
2    presented at trial (*Id.*).  Movant complains that his trial counsel did not object and the
3    government did not recuse witnesses who gave conflicting testimony with other statements
4    made in reports, interviews, affidavits, and while otherwise testifying (*Id.*).  In support,
5    Movant cites to discrepancies he believes important (*Id.*).  Also in support, Movant posits
6    that his two roommates' testimonies at trial were given under duress or with some unknown
7    incentive (*Id.*).

8         In their Answer, Respondent argue that Movant's Ground Three claims fail (Doc.
9    31 at 38-47).  In doing so, Respondent provides accurate legal descriptions of *Napue*,
10   *Brady*, and *Giglio* violations (*Id.* at 38-40).  In short, *Brady v. Maryland* recognized a
11   criminal defendant's due process right to disclosure of any favorable evidence in the
12   government's possession. 373 U.S. 83, 87-88 (1963).  To succeed in a *Brady* challenge,
13   the defendant must show that he suffered prejudice as a result of the wrongly withheld
14   evidence.  *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  *Giglio v. United States*
15   recognized that the prosecution must disclose evidence of any promises made to its
16   witnesses.  405 U.S. 150, 154 (1972).  Under *Napue v. Illinois*, a criminal defendant can
17   challenge his conviction if the prosecution failed to correct material evidence which it knew
18   to be false.  360 U.S. 264, 268 (1959).

19        Upon review of the parties' briefing and the underlying record, Respondents are
20   correct that Movant's arguments regarding *Brady* and *Giglio* based on speculation
21   regarding his roommates' trial testimony do not state a claim of ineffective assistance of
22   counsel (*Id.* at 41-43).  Further, the trial transcripts reflect that Movant's trial counsel
23   effectively cross-examined Movant's roommates at trial as well as the Government's other
24   witnesses (CR Docs 203-206).

25        Insofar as ineffective assistance of counsel based on failure to pursue a *Napue*
26   violation, Respondents are also correct that:

27       [i]nconsistent statements by a witness do not support a *Napue* violation.
28       *United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011), citing *United*

- 17 -

1
2
3

> *States v. Williams*, 547 F.3d 1187, 1202 n. 13 (9th Cir. 2008) ("Although there were inconsistencies in Penate's testimony, there was no evidence that the government knowingly presented false testimony…the inconsistencies in Penate's testimony were argued to the jury.").

4    (Doc. 31 at 44).  For reasons described by Respondents, Movant also has not stated a claim

5    of ineffective assistance of counsel based on failure to pursue a *Napue* challenge (Doc. 31

6    at 38-47).

7        Indeed, like with Movant's roommates, Movant's trial counsel effectively cross

8    examined the remainder of the Government's trial witnesses (CR Docs 203-206).

9    Respondents summarize trial counsel's defense strategy, which was supported by the entire

10   record to and through trial:

11
12
13
14
15
16
17
18
19
20

> From the trial record, it is clear that [trial counsel] had a strategy that was to (1) question, or attempt to discredit, the credibility of Theodore Welch, the internet service subscriber to the residence; (2) question, or attempt to discredit, the credibility of Travis Kohn, the roommate [whose bedroom was] in the garage; and (3) raise the possibility that another adult had the password to the modem and did the illegal activities; (4) attack the FBI investigation with things such as not seizing the modem for analysis, failing to interview neighbors, the entry into the residence at 6:50 a.m. on the cold January 23, 2018 morning, [Movant] being placed in handcuffs immediately to be walked to the FBI vehicle, not taking devices from the scene for more in depth analysis, and not having a photograph of the laptop computer in place underneath the bed; and (5) attack the government's case as circumstantial based on the fact that no one had witnessed [Movant] using his computer to download, share, or possess child pornography.

21   (Doc. 31 at 70).  The record also demonstrates that pretrial counsel was also vigorous in

22   advancing defense strategies throughout pretrial proceedings and leading up to trial,

23   including regarding electronic, technical, and computer evidence and the collection of

24   such.  As described by Respondent:

25
26
27
28

> On November 1, 2019, [pretrial] counsel Maria Weidner filed five pretrial motions— a motion to suppress [Movant's] IP address (CR ECF 76); a motion to suppress evidence (CR ECF at 77); a motion to suppress evidence obtained in connection with [Movant's] residence (CR ECF at 78); a motion to suppress [Movant's] statement to law enforcement (CR ECF at 79); and a motion *in limine* to exclude images, file names, and graphic descriptions of

the alleged child pornography at trial (CR ECF at 80). The government filed its response to each of these five motions. (CR ECF at 81, 83, and 98.) [Pretrial] counsel filed a reply to three of these. (CR ECF at 96, 97.)

On January 30, 2020, Judge Brnovich denied [Movant's] three motions to suppress filed in CR ECF 76, 77, 78. (CR ECF at 111.)

(Doc. 31 at 8-9). Further:

On July 26, 2019, [pretrial counsel] Ms. Anderson and Ms. Weidner filed a Motion to Compel, which requested a copy of the law enforcement's proactive software Torrential Downpour. (CR ECF at 65.) The government filed a response on August 14, 2019 (CR ECF at 69.) [Pretrial counsel] filed a reply on August 28, 2019. On September 10, 2019, the court held a status hearing where some testing would be allowed, but a copy of the software would not be turned over, with a further status conference to be held on October 21, 2019. (CR ECF at 73.) On October 21, 2019, the status conference confirmed that the testing had taken place with results to be sent to the defense expert and [pretrial counsel] averring that it would ask for additional testing. (CR ECF at 75.) Over the three days of November 25-27, 2019, an evidentiary hearing was held on the [pretrial counsel's] motion to compel discovery. (CR ECF at 87, 88, 89.) On June 19, 2020, [pretrial counsel] Ms. Anderson filed a Motion to Compel Additional Discovery relating to the Torrential Downpour software. (Doc. 127.) On August 14, 2020, the government filed a Response. (CR ECF at 131.) On August 28, 2020, the defense filed a Reply. On September 10, 2020, the court held an evidentiary hearing, granting in part and denying in part, the motion. (CR ECF at 135.)

(Doc. 31 at 62 n.24) (emphasis removed).

In short, Movant's assertions and arguments do not state a claim for a *Napue*, *Brady*, or *Giglio* violation, nor does the record support any such claim. Thus, Movant's ineffective assistance of counsel claims for failure to raise such violations fail to state a claim on either of *Strickland*'s prongs. Further, the record shows that Movant has not stated a claim of ineffective assistance of counsel claim against pretrial counsel or trial counsel regarding their defense strategies and handling of Government witnesses insofar as advancing such defense strategies. Rather, the record clearly demonstrates that Movant's Ground Three claims fail.

   **4. *Ground Five: Argument that trial counsel was ineffective for not calling witnesses at trial, particularly expert witness Michele Bush, investigator Renee DeSaye, and even regarding Movant himself***

  In Ground Five of the Amended § 2255 Motion, Movant alleges that his trial counsel provided ineffective assistance of counsel at trial by not calling witnesses at trial, specifically defense investigator Renee DeSaye and expert witness Michele Bush (Doc. 26 at 37-39).  Movant points to the joint witness list filed by the parties in advance of trial with Ms. DeSaye's and Ms. Bush's names listed (*Id.* at 37, referring to CR Doc. 172).  Movant asserts that trial counsel's decisions not to call Ms. DeSaye and Ms. Bush as witnesses was last minute and, therefore, ineffective (*Id.* at 37).

  In his Amended § 2255 Motion, Movant does not specify what testimony defense investigator Renee DeSaye would have offered at trial (Doc. 26 at 37-39).  Movant states that he does not know whether or not investigator Renee DeSaye "had interviewed witnesses Theodore Welch and Travis Kohn prior to trial, to further develop a valid trial defense" (*Id.* at 38).  In his Amended § 2255 Motion, Movant "concedes that information regarding Renee DeSaye other than the fact that she is a private investigator is limited and her absence may or may not have caused Movant prejudice" (*Id.* at 37).  In Movant's affidavit accompanying his reply, Movant asserts that investigator Renee DeSaye "did not adequately prepare or investigate in preparation for the trial itself" in discussing investigation of Theodore Welch's and Travis Kohn's prior criminal records (Doc. 36 at 29, ¶ 22).  In reply and referencing expert witness Michele Bush and investigator Renee DeSaye, Movant makes general assertions that trial counsel's "failure to investigate, present evidence and testimony through available witnesses with specialized knowledge, such as his investigator, or a subject matter expert for analysis of other available evidence" (Doc. 36 at 22; *see also id.* at 23-24).  In Exhibit D to his reply in support of the Amended § 2255 Motion, Movant complains that he was unaware of Movant's roommate and later Government trial witness Kohn's criminal record, which Movant implies was Ms. DeSaye's role to discern in assisting trial counsel (*Id.* at 29, ¶¶ 21, 22).

Upon careful review, Respondent is correct regarding investigator Ms. DeSaye that:

[Movant] has not made a showing to grant an evidentiary hearing since he has not shown what Ms. DeSaye would have offered. Further, [Movant] is mistaken in his assertion that [trial counsel's] decision was a "last minute" one that caused prejudice to his case. (CV ECF 21 at 37.) This is because on June 7, 2021, two weeks prior to trial during the Final Pretrial Conference, [trial counsel] was very clear about Ms. DeSaye's role in [Movant's] case. When the parties were asking about COVID protocols and how many people were going to be allowed to sit at counsel table, [trial counsel] stated, "And, I also have my investigator that helps me pick juries and works with me during trial so…" (RT 6/7/21 at 97.) [Trial counsel] further elaborated that Ms. DeSaye had a spreadsheet that he needed to access and "She's a whiz at picking juries." *Id.* [Trial counsel] had a clear purpose for her, and her name being read to the jury was proper because she was going to be physically present and visible during jury selection and trial.

[Movant] may believe that Ms. DeSaye ought to have been called as a witness, but his mere speculation about her helpfulness to his case does not rise to the level of ineffectiveness. *See Zahran v. United States*, 2017 WL 4310697, at *4 (trial counsel not ineffective for not having a forensic accountant testify due to the resources, the status of the record, and the government's analysis of the record; it was a reasonable strategy to not call certain witnesses when the testimony could have been counterproductive by opening doors to negative areas).

(Doc. 31 at 60-61). Movant's assertions in his reply in support of the Amended § 2255 Motion are as non-specific and speculative as his assertions in the Amended § 2255 Motion (Doc. 36 at 23). Further, the jury was informed before Movant's roommates, Welch and Kohn, were called as trial witnesses that "the parties have stipulated and agreed that the next two witnesses and the defendant in this case all have a felony conviction or convictions for drug crimes involving marijuana." (RT 6/22/21 at 215, 397; CR Doc. 204 at 3, 185).

Regarding expert witness Michele Bush, Movant states in his Amended § 2255 Motion that "Michelle Bush was involved at length in the pretrial process, meaning that there is a body of evidence to evaluate the effect her absence had upon Movant's ability to defend himself from the Government's allegations" (Doc. 26 at 37). Movant recounts that Michele Bush "first became involved when [pretrial counsel] hired her to examine Torrential Downpour, the software used to gather evidence against Movant" (*Id.*). Movant

concedes that "Ms. Bush's role was at first to submit an argument against the initial search warrant, which is not at issue here and has already been adjudicated in other federal jurisdictions" (*Id.*).  Movant asserts that "the issue in this matter is Ms. Bush's evidence that casts a reasonable doubt on the Government's case" (*Id.*), which Movant describes on the next page of his Amended § 2255 Motion (*Id.* at 38).  In the description, Movant references Ms. Bush's testimony at a pretrial evidentiary hearing regarding her tests of Torrential Downpour (*Id.*).

Respondent is correct regarding Movant's claim based on failure to call Ms. Bush as a trial witness that:

> [Movant] is again mistaken that [trial counsel] made a last-minute decision to not call Ms. Bush. On June 7, 2021, at the Final Pretrial Conference two weeks prior to trial, [trial counsel] stated, "…[I'm] probably going to have, at least part of my trial, I'll have a forensic expert. I'm not going to call her as a witness, but I would like to have her at counsel table up there." (RT 6/7/21 at 97-98.) The court authorized that the expert could sit behind defense counsel if she was not a witness. [Trial counsel] responded, "No, she's not going to be called. She's listed as a witness, I think, but we are not calling her," followed by "And I will avow to that." (RT 6/7/21 at 98.) She was not called at trial just as [trial counsel] had represented. The record supports, therefore, that Ms. Bush was going to act in her expert capacity to side by side with [trial counsel], likely to assist with the forensic testimony from the government.

> Additionally, [Movant] cannot show that Ms. Bush would have offered testimony that could raise a serious or reasonable doubt that Torrential Downpour, the proactive law enforcement software, was unreliable as [Movant] claims. (CV ECF 21 at 37-38.) Michele Bush is an employee of Loehrs Forensics, a computer forensic expert firm owned by her mother, Tami Loehrs. (RT 11/26/19 at 119-20.) The firm has taken on approximately 200 cases involving the Torrential Downpour software, though Ms. Bush acknowledged that they were not a BitTorrent network expert, and they were not a software company. (RT 9/10/20 at 62.)

> Further, by the time of trial, [trial counsel] had the benefit of the full breadth of litigation which included the parties' motions, responses, reports, and hearing transcripts relating to the extensive litigation about Torrential Downpour's reliability. This included the two times Ms. Bush had been called as a witness and was cross-examined about the Loehrs Forensics'

opinions of Torrential Downpour. The litigation also included the testimony and cross-examination of the government's witness, Detective Robert Erdely, who had also twice testified and been cross-examined at the same two hearings. Detective Erdely was the co-creator of the Torrential Downpour software who explained his knowledge of the BitTorrent file sharing network and its protocols (i.e. the rules for the network), the various client software users use to access the network, a .torrent file, and indices. Detective Erdely also explained Torrential Downpour, a software created for law enforcement use on the BitTorrent network in child exploitation investigations specifically to detect those sharing and receiving child pornography. He explained how Torrential Downpour was created (meaning coded), from scratch and was not a modified version of a product already available. Detective Erdely explained what a log file was (a written record of the connection between the law enforcement computer and suspect computers' investigative session), and how it recorded the computer data being transmitted by the suspect computer, like it does in the public native setting of the BitTorrent network.

Thus, prior to trial, [trial counsel] had the benefit of knowing the results of the defense testing in [Movant's] case and the government expert's expected testimony and rebuttal to any challenge that Ms. Bush may have made to include that Torrential Downpour operated normally and usually without anomalies during the investigation and during the testing. Mr. Cates also had the benefit of *United States v. Hoeffener*, 950 F.3d 1037, 1044 (8th Cir. 2020), a case that [Movant] acknowledges in his § 2255 motion. (CV ECF at 37.) In *Hoeffener*, the Eighth Circuit found no abuse of discretion by the magistrate judge who denied the defense motion to compel which requested the government to turn over the source code, manuals, and software for Torrential Downpour to Loehrs Forensics on the bases of lack of materiality to the defense case. *Id.*

[Movant's Amended] § 2255 motion, furthering any unsupported narrative about the failures of Torrential Downpour, does nothing to upend [trial counsel's] strategic decision to not call Ms. Bush as a witness. Further, [Movant's] motion does not come close to describing the large volume of the forensic data located on his desktop and laptop computers that the jurors were presented in the trial exhibits, and by the fact that [Movant] possessed a collection of several thousand child pornography files on a laptop computer underneath his bed.

(Doc. 31 at 61-64) (footnotes omitted).   Indeed, Respondent goes on to explain why Movant's Amended § 2255 Motion argument in this matter regarding four Torrential

1    Downpour files (Doc. 26 at 38) fails based on the record developed in extensive pretrial

2    hearings at which expert testimony was taken (Doc. 31 at 64-70). Movant's general reply

3    assertions regarding Ms. Bush (Doc. 36 at 24) are inadequate to state a claim in light of the

4    record.

5         Insofar as Movant includes in his arguments that it was ineffective for his trial

6    counsel not to call Movant as a trial witness, Movant avers in his reply in support of his

7    Amended § 2255 Motion that at the time of trial when it came time for Movant to make

8    the decision to testify or not, Movant was unable to testify given the trial experience (*Id.* at

9    8). Movant avers that he was "mentally numbed and temporarily unable to gather his

10   faculties for purposes of testifying before the District Court" (*Id.*). Movant did not report

11   this to the Court when asked on the record about his decision to testify or not (RT 6/24/21

12   at 689; CR Doc. 206 at 34). During a trial break after the presentation of the prosecution's

13   evidence and denial of a defense motion pursuant to Fed. R. Crim. P. 29, Movant consulted

14   with his trial about his whether Movant would testify or not (RT 6/24/21 at 688-689; CR

15   Doc. 206 at 33-34; *see also* CR Doc. 169). Upon reconvening, trial counsel stated on the

16   record that it was the defense intention to rest when the jury came back (*Id.*). When

17   thereafter asked by the Court whether it was Movant's choice not to testify, Movant stated

18   on the record, "Yes, that is my choice not to testify" (RT 6/24/21 at 689; CR Doc. 206 at

19   34). Further, in his reply in support of his Amended § 2255 Motion, Movant states that

20   had Movant chosen to testify during the trial, Movant's trial testimony would have been

21   simple and direct denials of any admissions and of the criminal allegations against him

22   (Doc. 36 at 8). Respondent is correct that:

23        In the event he would have testified, [Movant] would have faced a cross-
24        examination that showed the extensive, corroborating forensic data on two
          computers that were located in his bedroom that pointed to him being
25        responsible. [Trial counsel's] strategy was to demonstrate, through cross-
          examination and argument, that the government did not produce anyone who
26        saw [Movant] doing any child pornography activities [such as searching for
          or watching child pornography], and to cast equal suspicion onto either of
27        [Movant's] adult roommates or another person who may have frequented
          their home. [Trial counsel] further attacked the techniques used by law

28

enforcement to gather evidence and conduct interviews. Even though the jury ultimately found [Movant] guilty, this did not render [trial counsel's] performance ineffective[.]

(Doc. 31 at 33).

Movant's assertions in his Amended § 2255 Motion and other filings in this matter are insufficient to state a claim on either *Strickland* prong regarding trial counsel not calling defense witnesses at trial, including expert witness Michele Bush, investigator Renee DeSaye, and Movant himself. Further, the record conclusively demonstrates that Movant's ineffective assistance of counsel claim regarding trial counsel not calling expert witness Michele Bush, investigator Renee DeSaye, and/or Movant as trial witnesses fails on both *Strickland* prongs.

### 5.    Summary

In considering Movant's ineffective assistance of counsel claims separately and as a whole, Movant fails to state a claim that any of his counsel's performances were constitutionally deficient or that he was prejudiced by his counsel's performances. Indeed, the record clearly reflects that pretrial counsel and trial counsel mounted a skilled defense of Movant from their entry of appearance in the case through the conclusion of their representation of Movant. Neither has Movant made a showing that his appellate counsel's performance was deficient under *Strickland* or caused Movant any prejudice.

Applying the highly deferential standard for judging representation by all of Movant's counsel about which Movant complains, Movant has not stated a claim that either that any of his counsel's representation "amounted to incompetence under 'prevailing professional norms,'" *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690), or that there existed a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694. Rather, as discussed above, the record conclusively demonstrates that Movant's ineffective assistance of counsel claims fail on both of *Strickland*'s prongs.

### B.    Movant's Claim Asserting Juror Bias

In Ground Four of the Amended § 2255 Motion, Movant alleges that a deliberating

juror's failure to disclose government employment from sixteen years earlier violated Movant's Fifth and Sixth Amendment rights (Doc. 26 at 34-36). After his conviction, Movant located a self-published book apparently written by Juror 13 who represents that his name is Art Keller ("Juror 13" or "Keller"). Attachment D (Doc. 31-4) to Respondent's Answer to the Amended § 2255 Motion is at least a substantial part of Juror 13's entire self-published book on Amazon. The self-published book describes the court environs, the jury trial process, the attorneys, trial judge, witnesses, and evidence from the Juror 13's perspective after completion of Juror 13's jury service (*Id.*). Respondent's Answer sums up the parties' positions regarding this ground:

> [Movant] asserts that Art Keller (Juror 13), a juror in his case who subsequently wrote and self-published a book about his jury service (Attachment D) presents evidence of being biased such that a hearing is necessary. (CV ECF 21 at 35.) The government disagrees with the notion that Mr. Keller brought any bias to the trial, actual or implied or "*McDonough* bias," and disagrees that a hearing is necessary. The government requests both that this Court deny his § 2255 motion on this basis, and deny his request for an evidentiary hearing.

(Doc. 31 at 48). Respondent's Answer addresses various forms of bias and argues an evidentiary hearing is unnecessary (*Id.* at 47-59).

In Ground Four of the Amended § 2255 Motion, Movant alleges bias by the book's author and stresses the references by the book's author to previous work with and for some United States agencies, including work with the agents for the Federal Bureau of Investigations ("FBI"), the same law enforcement investigating agency in the prosecution of Movant (Doc. 26 at 34-36). Nevertheless, Movant concedes that "[b]ias will not be presumed merely because a juror works in law enforcement or is a federal government employee" (*Id.* at 36).

By way of background, the parties' proposed juror questionnaire asked for employment history going back ten years (CR Doc. 154-1 at 9, question 20). Nevertheless, at a pretrial conference with counsel, Judge Brnovich shortened the employment history question length to five years (Doc. 31 at 9-10; Doc. 31-1 at 7, question 13; CR Doc. 156;

CR Doc. 226 at 5).  In the questionnaire sent to prospective jurors, there were no questions asking specifically about serving or having served as a law enforcement officer (Doc. 31-1), but there were questions about the prospective juror's educational background, spouse's employment and educational background, and employment of parents, children, and stepchildren (*Id.*).  The questionnaire sent to prospective jurors did ask prospective jurors questions directed generally toward any bias in Question 25 (if juror had any ethical, religious, moral, political, philosophical, or other beliefs), Question 26 (any other reason why juror could not be a fair and impartial juror in the case), and Question 30 (whether juror believed that judicial system was unfair) (Doc. 31-1 at 9-10).  Additional separate questions included possibilities for bias related to the nature of the case (i.e., child pornography images, sexual abuse, and use of marijuana) in Questions 27, 28, 29, 31, 32, 33, 34, and 35 (*Id.*).  In all, there were thirty-six questions in the twelve page questionnaire (*Id.*).

Prospective jurors were not generally asked about law enforcement experience during trial voir dire (RT 7/21/21 at 7-45; CR Doc. 203 at 7-45).  Nevertheless, trial voir dire revealed that the questionnaire was effective to raise issues with impartiality based on relevant law enforcement experience.  For example, when Juror No. 1's training at the police academy came up given his past experience as a juvenile probation officer, Juror No. 1 stated that Juror No. 1 would not tend to believe a law enforcement officer more than a non-law enforcement witness (RT 7/21/21 at 24-25; CR Doc. 203 at 24-25).  The Court declined trial counsel's challenge for cause as to Juror No. 1 due, in part, to Juror No. 1 having been retired for some years (RT 7/21/21 at 34-35; CR Doc. 203 at 34-35).

During jury selection, answers to the prospective juror questionnaire by Juror 13 (believed to be the book's author) did not lead to any follow up in trial voir dire (RT 7/21/21 at 7-45; CR Doc. 203 at 7-45).  Indeed, Juror 13 states at the start of the book that since the author left the CIA sixteen years before, he has been a reporter and writer regarding international politics, technology, and national security (31-4 at 1).  Upon careful review of the materials, neither the book provided by Respondent nor anything else in the record

supports any allegation that Juror 13 was dishonest directly or by omission in the jury questionnaire or voir dire or that Juror 13 was in any way biased.  Nor does the record or Movant indicate that Juror 13 introduced impermissible extrinsic evidence into jury deliberations.  *See Grotemeyer v. Hickman*, 393 F.3d 871, 879 (9th Cir. 2004) ("One great advantage of jurors over judges is their diversity of experiences."); *Hard v. Burlington Northern R. Co.*, 870 F.2d 1454 (9th Cir. 1989).  Upon careful review of the record and all the parties' arguments on this ground, the Court finds accurate and persuasive Respondent's Answer of Ground Four of the Amended § 2255 Motion (Doc. 31 at 47-59).  The record conclusively demonstrates that Movant's Ground Four of the Amended § 2255 Motion fails.

## C.    Evidentiary Hearing

For the reasons set forth above, Movant has failed to establish he is entitled to an evidentiary hearing on any of the grounds asserted in the Amended § 2255 Motion.  The record conclusively demonstrates that all of the grounds in the Amended § 2255 Motion fail on the merits.  Accordingly, Movant is not entitled to an evidentiary hearing in these Section 2255 proceedings.  *See* 28 U.S.C. § 2255(b) (requiring an evidentiary hearing only where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

Accordingly, undersigned recommends that the Amended § 2255 Motion be denied without an evidentiary hearing.

## V.    CERTIFICATE OF APPEALABILITY

A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A Section 2255 movant must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).  A certificate of appealability should be granted for any issue that the movant can demonstrate is debatable among jurists of reason, could be

resolved differently by a different court, or is adequate to deserve encouragement to proceed further. *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002). The court must resolve doubts about the propriety of a certificate of appealability in the movant's favor. *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000).

For the reasons set forth above, it is recommended that a certificate of appealability be denied because Movant has failed to make a substantial showing of the denial of a constitutional right.

## VI.    CONCLUSION

For the reasons set forth above, it is recommended that the Amended § 2255 Motion (Doc. 26) be denied without an evidentiary hearing. As discussed above, all of the grounds in the Amended § 2255 Motion are without merit and do not warrant an evidentiary hearing. Further, Movant has not made a substantial showing of the denial of a constitutional right in any ground of his Amended § 2255 Motion; thus, a certificate of appealability should be denied. *See* 28 U.S.C. § 2253(c)(2).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Amended § 2255 Motion (Doc. 26) be denied with prejudice without an evidentiary hearing and that the Clerk of Court be directed to terminate this matter.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied because Movant has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and

Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72. In addition, LRCiv 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated this 24th day of February, 2025.

_____
Honorable Deborah M. Fine
United States Magistrate Judge